UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19-cv-60-FDW

| | |
|---|---|
| WILLIAM KIMBLE, JR., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| HUBERT CORPENING, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on initial review of the Second Amended Complaint, (Doc. No. 17). Plaintiff Kimble is proceeding *in forma pauperis*. (Doc. No. 22).

I.  **BACKGROUND**

*Pro se* Plaintiff Kimble filed this civil rights suit pursuant to 42 U.S.C. § 1983 while incarcerated at the Marion Correctional Institution. (Doc. No. 1). The Amended Complaint, which was filed on behalf of Plaintiff and a number of other inmates, was severely deficient and was dismissed on initial review. (Doc. Nos. 10, 12). The Court granted Plaintiffs 21 days within which to cure the deficiencies and cautioned them that failure to do so would probably result in dismissal. (Doc. No. 12). Only Plaintiff Kimble filed a Second Amended Complaint, (Doc. No. 17), which is presently before the Court on initial review.

Plaintiff Kimble names the following as Defendants in the Second Amended Complaint: Director of Prisons Kenneth Lassiter, Correctional Administrator H. Corpening, Assistant Superintendent of Programs David Cothron, Program Director III Julie Jenkins, and Program Director III Gary Swink.

Liberally construing the Second Amended Complaint and accepting the allegations as true,

1

Plaintiff had a hearing before the Director's Classification Committee ("DCC") for a disciplinary infraction on January 24, 2018 at Pasquotank C.I. He was given 180 days on restrictive housing for assaulting another inmate. However, rather than restrictive housing, he was sent to Marion C.I. to be placed in the Rehabilitative Diversion Unit ("RDU")[1] without notice or a hearing March 2, 2018.

According to Plaintiff, Defendant Lassiter created the 13-month RDU program and was aware of Plaintiff's procedural due process rights. He claims that all of the Defendants acted with deliberate indifference and intentionally ignore Plaintiff's due process rights. He claims that the RDU is a 13-month three-step program during which the first 240 days consist of restrictive regulations that is basically single-cell confinement which was supposed to have been eliminated in 2017. He further complains that inmates are required to attend classes for two hours at a time, that inmates are shacked and handcuffed in 4-point restraints whenever they are out of the cell, they have to strip down when officers conduct regular cell searches, there is 24-hour lighting that prohibits sleep, and the officers treat inmates unprofessionally.

As injuries, Plaintiff claims that has "develop[ed] some symptoms of post-traumatic stress disorder and anxiety and emotional stress [and] had to see the doctor to be prescribed some medication for headaches and not being able to sleep at night or during the day." (Doc. No. 17 at 5).

As relief, Plaintiff seeks compensatory damages, punitive damages, costs, a jury trial, and any additional relief the Court deems just, proper, and equitable. (Doc. No. 17 at 5).

---

[1] The RDU program at Marion "was created as part of NCDPS's recent policy reforms regarding restrictive housing in the North Carolina prisons." Covington v. Lassiter, No. 1:16cv387, 2017 WL 3840280, at *5 (W.D.N.C. Sept. 1, 2017). A full description and discussion of the RDU program at Marion can be found in Covington v. Lassiter, and this Court takes judicial notice of the Court's description of the RDU program in that action.

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff

to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III.   DISCUSSION

**(1)   Parties**

A superior officer cannot be held vicariously liable under 42 U.S.C. § 1983 on a *respondeat superior* theory, but he may be found liable under section 1983 on the basis of his own acts or omissions. See Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978). A state official can be in a § 1983 suit in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity. King v. Rubenstein, 825 F.3d 206, 223–24 (4th Cir. 2016). For personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). In an official-capacity suit, however, "[m]ore is required:" the suit is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation," id. (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); thus, the entity's "'policy or custom' must have played a part in the violation of federal law," id. (quoting Monell, 436 U.S. at 694). Meanwhile, a supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

It appears that Plaintiff is attempting to state a claim against Defendant Lassiter for having promulgated the RDU. However, Plaintiff has failed to adequately allege that the RDU exposed him to unconstitutional conditions of confinement as set forth in Section (2), *infra*, so the claim against Defendant Lassiter in his supervisory capacity is insufficient to proceed. Plaintiff does not appear to allege liability based on policy or custom against the other Defendants. Moreover, Plaintiff's allegations are too vague and conclusory to set forth a claim based on any of the Defendants' personal actions or omissions. See generally Fed. R. Civ. P. 8(a)(2) (a short and plain statement is required); Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient); Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim). Nor can Plaintiff rely on a theory of *respondeat superior* because there is no such liability in § 1983 actions. See Monell, 436 U.S. at 694. Therefore, the Second Amended Complaint fails to state a claim against any of the Defendants and is subject to dismissal on that basis alone.

**(2)** **Conditions of Confinement**

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The Constitution "does not mandate comfortable prisons, … but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Thus, prison official must provide sentenced prisoners with

adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the[ir] safety…." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see Farmer, 511 U.S. at 832-34. Inmates' claims that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir.1987). To establish the imposition of cruel and unusual punishment, a prisoner must prove two elements: (1) "the deprivation of [a] basic human need was objectively sufficiently serious," and (2) "subjectively the officials act[ed] with a sufficiently culpable state of mind." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (quotation omitted).

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission ... result[s] in the denial of the minimal civilized measure of life's necessities." Id. at 298 (citing Rhodes, 452 U.S. at 347).

The conditions that Plaintiff has described are not sufficiently serious to amount to a constitutional deprivation and he has failed to adequately allege that prison officials imposed these conditions with deliberate indifference to his health and safety. Plaintiff's allegations regarding the conditions to which he was subjected while in the RDU program do not satisfy the very high standards for cruel and unusual punishment under the Eighth Amendment. See generally De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003); see, e.g., Allen v. Mitchell, No. 1:18-CV-65-FDW, 2018 WL 4494988, at *3 (W.D.N.C. Sept. 19, 2018). Therefore, Plaintiff's Eighth Amendment

claims are insufficient to proceed.

**(3)** **Due Process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Stone, 855 F.2d at 172.

A plaintiff does not have a federally protected liberty interest in any particular housing or classification unless it exceeds the scope of his original sentence and imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472 (1995); Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (*en banc*) ("[C]hanges in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation) and the denial of privileges … are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and efficiently.").

Plaintiff admits that he received 180 days of restrictive housing in a disciplinary matter and he does not appear to contest the process he received in those proceedings. Rather, he complains that he was sent to Marion C.I.'s RDU program instead of the restrictive housing that he expected. Plaintiff has failed to allege adequate facts showing that the RDU program posed an atypical and

significant hardship in relation to the ordinary incidents of prison life under these circumstances. See Allen, 2018 WL 4494988. Therefore, Plaintiff's due process claims are insufficient to proceed.

**(4)** **Relief**

To the extent that Plaintiff seeks injunctive relief, such a claim is moot because Plaintiff no longer resides at Marion C.I.; his address of record is at the Bertie Correctional Institution. See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986). Moreover, Plaintiff cannot recover compensatory damages because he has failed to adequately allege the existence of a physical injury. See 42 U.S.C. § 1997e(e). See Perkins v. Dewberry, 139 Fed. Appx. 599 (4th Cir. 2005) (unpublished) (stating that "*de minimis* physical injuries cannot support a claim for mental or emotional injury."); Mayfield v. Fleming, 32 Fed. Appx. 116 (4th Cir. 2002) (unpublished) (stating that "the district court correctly concluded that [plaintiff's] claim for money damages is barred because he can show no physical injury.").

**V.  CONCLUSION**

For the foregoing reasons, the Second Amended Complaint is dismissed for failure to state a claim upon which relief can be granted and this case will be closed.

**IT IS, THEREFORE, ORDERED** that:

1. The Second Amended Complaint, (Doc. No. 17), is **DISMISSED** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2. The Clerk of Court is directed to terminate this action.

Signed: June 11, 2019

_____
Frank D. Whitney
Chief United States District Judge